**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**ROBERT COONEY**                                                                          **PLAINTIFF**
**#108929**

**v.**                                  **CASE NO. 4:25-CV-00063 JM**

**OFFICER MCJUNKINS and OFFICER BALL,**
**each in their official and individual capacities**                        **DEFENDANTS**

### ORDER

Pending is a motion for summary judgment filed by Conway Police Officers Jimmy

McJunkins and Adam Ball. (Doc. No. 25). Plaintiff Robert Cooney, after being given an

extension of time to file a response, did so on May 12, 2026. (Doc. No. 34). His response is one

paragraph. For the reasons stated below, Defendants' motion for summary judgment is granted.

Prior to the filing of the motion for summary judgment, Plaintiff filed a second motion to amend

his complaint (Doc. No. 22) which the Court will also address.

### Background

Plaintiff filed a pro se complaint alleging excessive force and deliberate indifference to

his medical needs following his arrest on December 6, 2024. He named Officers Ball and

McJunkins in his complaint and, by suing the officers in their official capacity, has also sued the

City of Conway.[1]  Plaintiff alleges that Officer McJunkins punched him in the face several times

after he was handcuffed and then continued to hit him while Officer Ball pinned him down with

his knee on Plaintiff's neck. Plaintiff also alleges that the City of Conway has a history of turning

---

[1] "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).

a "blind eye" toward complaints from African Americans about the force used by its white officers.  He maintains that the City has received numerous complaints about the force used but has never taken any corrective action.

Defendants filed a motion for summary judgment as to all claims. In support of their motion, they filed a statement of undisputed material facts ("SUMF") (Doc. No. 27) which set forth the following:

On December 6, 2024, Officer Adam Ball responded to a call about an aggravated burglary that had just occurred. Upon arrival, Officer Ball made contact with the victim, Brandon Youngblood, who advised that he had just been robbed by "Bobby C."  Mr. Youngblood stated that he was sleeping on his bed when Bobby C came in demanding money. Mr. Youngblood said he showed Bobby C where his wallet was, and Bobby C stole it from his back pocket. Mr. Youngblood advised that Bobby C was armed with a knife at the time and was known to carry a gun.

Mr. Youngblood described Bobby C as an older black male with a black hoodie who stays with his girlfriend Kay who he thought lived in trailer 67 or 68. Officer Ball went to trailer number 67 and talked to a woman that advised him that Bobby C stays in trailer 44. Officer Ball then proceeded to trailer 44 and made contact with Chadwick Corley and a white female named Kay. Mr. Corley and Kay said they didn't know where Bobby C was. Mr. Corley gave consent for officers to search the back bedrooms.

Officer Ball and Officer Kyle Krogman[2] proceeded into the home and cleared the first bedroom. A black male identified as James McMillion was in this room. Mr. McMillion had a

---

[2] The statement of facts omits the name of the officer, but it is supplied in the incident report, Doc. No. 27-1, p. 4.

felony arrest warrant and was taken into custody by Officer Charles Reynolds. At that time, there didn't appear to be anyone else in that bedroom, so officers went to the next bedroom and cleared it. As the officers were walking back, they heard a noise coming from the first bedroom. Officer Kyle Krogman entered the room and found Plaintiff wearing a black hoodie coming out from hiding in the closet. Officer Krogman began giving Plaintiff commands to show his hands; he did not initially comply. Based on the conversation with Mr. Youngblood earlier, officers had reason to believe that Plaintiff might be armed with a gun or a knife which prompted Officer Ball to draw his service weapon. Plaintiff showed his hands but kept reaching around his person and wouldn't follow commands to come out of the closet and place his hands behind his back. Instead, Plaintiff began stepping back towards the closet.[3]

At that point, Officer Ball grabbed Plaintiff's wrist and motioned him to the ground. Plaintiff pulled his arm away and tried to create distance between himself and the officers. Officer Ball then tried to unsuccessfully to roll Plaintiff over onto his stomach. Plaintiff continued to resist officers by pulling his arms away and failed to comply with commands. Officer Krogman then struck Plaintiff in the face.[4] Plaintiff continued to resist officers by tensing up his arms and trying to roll over onto his back. Officer Ball ultimately gained control of Plaintiff's right arm. Officer Lucas Babcock[5] had come for backup and was able to gain control of the other arm. Officer Krogman then assisted in placing Plaintiff in handcuffs. Officers called EMS to the scene for medical assistance, but the Plaintiff refused to be treated on scene after EMS arrived.

---

[3] Officer Krogman described Plaintiff's actions at this point as "reaching down beneath his feet digging in a blanket." (Doc. No. 27-1, p. 6).

[4] In his report, Officer Krogman states that he verbally warned Plaintiff that if he did not present his arm, Krogman was going to punch him. (Doc. No. 27-1, p. 6).

[5] Identified in the incident report. (Doc. No. 27-1, p. 4).

While still at the scene, after being read his Miranda rights, Plaintiff admitted that he went to Youngblood's house because Youngblood had been messing with his girlfriend. Plaintiff further advised that Youngblood owed him money, so he took Youngblood's wallet. Plaintiff further claimed that he gave the money out to other people in the trailer and advised that he was not armed with a knife or a gun. Plaintiff was taken to the Police Department. On December 10, 2024, Officer Jimmy McJunkins went to Unit 2 of the Faulkner County Detention Center and served a warrant on Plaintiff. Officer McJunkins had no other participation in this incident.

In addition to the SUMF, Defendants submitted exhibits including the incident report and the bodycam video (without audio) of Officer Ball. Plaintiff did not respond to Defendants' SUMF, other than the single page response to the motion for summary judgment which stated: "I do not agree with the motion of summary judgment.  Simply because [the motion for summary judgment, brief in support, and statement of undisputed material facts] are not accurate. There are too many omitted details and [inconsistent] statements." (Doc. No. 34).

<u>Legal Standard</u>

Summary judgment is appropriate only when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is "no genuine issue of material fact and that the moving party is entitled to entry of judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment "the Court views the facts in the light most favorable to the nonmoving party and allows that party the benefit of all reasonable inferences to be drawn from the evidence." *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997).

The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex*, at 323. "Once a motion for summary judgment is made, however, the

nonmoving party cannot simply rest on the allegations of the complaint, but must come forward with specific facts to demonstrate a genuine issue for trial." *Charlima, Inc. v. United States*, 873 F.2d 1078, 1080 (8th Cir. 1989) (citations omitted). "'A party asserting that a fact ... is genuinely disputed must support the assertion' with evidence, or with pleadings such as interrogatory answers and admissions." *Arnold v. McClinton*, 112 F.4th 598, 601 (8th Cir. 2024) (quoting Rule 56(c)(1)). "Failing to properly support the assertion permits the court 'to consider the fact undisputed for purposes of the motion.'" *Id.* (quoting Rule 56(e)(2)).

Discussion

As established by the legal authority cited above, Plaintiff was required to do more than generally assert that the facts put forth by Defendants were inaccurate, inconsistent, and had omissions. The video images from Officer Ball's bodycam support Defendants' SUMF. While the precise movements of Plaintiff and each of the officers during the take-down in the bedroom are rapid and not easily distinguishable, the video images do not contradict the SUMF. The incident report containing the accounts of Officers Krogman, Reynolds, Babcock, Ball, McCormack, and McJunkins does not contain any material inconsistencies in the officer's statements.[6] In his response Plaintiff fails to identify a single omission or inaccuracy. On this record, Defendants' SUMF are considered undisputed.

1. Excessive force. "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Davenport v. City of Little Rock*, 142 F.4th 1036, 1044 (8th Cir. 2025) (citations omitted). "The calculus of reasonableness must embody

---

[6] The witness statements recounted in the incident report do have inconsistencies, but these inconsistencies are not relevant to the actions of the officers in their encounter with Plaintiff.

allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Winters v. Adams*, 254 F.3d 758,  (8th Cir. 2001) (quoting *Graham v. Connor,* 490 U.S. 386, 396-397 (1989)). The factors to be considered in making this calculus include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Officers Ball and McJunkins are entitled to summary judgment on Plaintiff's excessive force claims. Officer McJunkins has established that he was not present in the take-down of Plaintiff that occurred on December 6, 2025. As to Officer Ball, his actions in pulling his service weapon, motioning Plaintiff to the ground, grabbing his wrist, and torquing his arm were objectively reasonable under the circumstances. The officers had reason to believe that Plaintiff had a knife and possibly a gun, he did not follow commands to turn around and put his hands behind his back but instead was reaching back or down, and he had pulled away from Ball once. Add to this that it was a crowded space both in the bedroom and in the trailer, with one individual at the scene having been taken into custody on a felony arrest warrant; that Plaintiff had surprised them by initially avoiding detection by hiding in a closet; and that it ultimately took three officers to get Plaintiff in handcuffs.

2. <u>Deliberate indifference.</u> The Eighth Amendment's prohibition on cruel and unusual punishment extends to protect arrestees from deliberate indifference to serious medical needs. *Smith-Dandridge v. Geanolous*, 97 F.4th 569, 575 (8th Cir. 2024). In considering a claim of deliberate indifference, courts consider whether a plaintiff demonstrates "an objectively serious medical need" that defendant "knew of, but deliberately disregarded." *Id.* The medical need must

6

be "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011).

In his complaint, Plaintiff alleges that following his arrest, his face and neck were extremely swollen, he had difficulty breathing, and he could not talk at all. The evidence from the bodycam shows that following his arrest, Plaintiff was standing outside in handcuffs smoking a cigarette that one of the officers lit for him. And he was talking. This is not evidence of a serious medical need. The video also shows the arrival of an ambulance and the approach of paramedics to attend Plaintiff. Then it shows them turning to leave without examining him. As established in Defendants' SUMF, Plaintiff refused medical treatment. On these facts, Defendants are entitled to summary judgment on Plaintiff's claim of deliberate indifference.

3. <u>Municipal liability</u>. "To establish municipal liability, a plaintiff must prove that an official municipal policy, deliberately indifferent failure to train or supervise, or unofficial custom caused the constitutional injury." *Corwin v. City of Independence, Missouri*, 829 F.3d 695, 699 (8th Cir. 2016) (*citing Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)). Absent an underlying constitutional violation, there can be no municipal liability. *See Edwards v. City of Florissant, Missouri*, 58 F.4th 372, 376 (8th Cir. 2023). Defendants are entitled to summary judgment on their claim for municipality liability.

4. <u>Plaintiff's motion for leave to amend his complaint.</u>  Plaintiff filed a motion to amend his complaint to add the City of Conway and an Officer Malfatti. (Doc. No. 22).  As stated above, a suit against the officers in their official capacity is a suit against the city, and there is no need to amend the complaint to add Conway as a party.  The incident report establishes that none of the officers Plaintiff came into contact with as a result of his arrest were named Malfatti. The

Court finds that an amendment to add this officer as a party would be futile. Plaintiff's motion to amend his complaint is denied.

Conclusion

Therefore, Defendants' motion for summary judgment (Doc. No. 25) is GRANTED. Plaintiff's motion for leave to amend (Doc. No. 22) is DENIED. The Court also denies Defendants' motion to stay pretrial deadlines (Doc. No. 35) as MOOT in light of this order.

IT IS SO ORDERED this 19th day of May, 2026.

_____
UNITED STATE DISTRICT JUDGE